**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Tobi Schmidt, | : | |
| | : | Case No. 1:12-cv-397 |
| Plaintiff, | : | |
| | : | Judge Michael R. Barrett |
| v. | : | |
| | : | |
| Overland Xpress, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

This matter is before the court on Plaintiff Tobi Schmidt's Motion for Summary

Judgment (Doc. 58). Defendants Jason Brown and Terese Brown filed a *pro se* Response (Doc.

62) in opposition, to which Schmidt filed a Reply (Doc. 65). Defendant Overland Xpress, LLC

("Overland") did not file a response. For the reasons that follow, the Court will **DENY** summary

judgment to Schmidt.

**I.   Background**

**A.   Factual History**

Schmidt began employment with Overland in August 2010 as an account executive or

broker. (Doc. 58-1, PageID 979; Doc. 62-1, PageID 1059.) Jason Brown was the CEO of

Overland, and Terese Brown was the Chief Human Resources Officer for the company. (Doc.

58-1, PageID 980.)

Schmidt received Overland's Employee Handbook and signed a receipt dated August 16,

2010. (Doc. 62-1, PageID 1063.) The Employee Handbook addressed eligibility for employee

benefits:

REGULAR FULL-TIME employees are those who are regularly scheduled to work at OLX full-time schedule. Generally, they are eligible for OLX benefit package, subject to the terms, conditions, and limitations of each benefit program.

REGULAR PART-TIME employees are those who are regularly scheduled to work less than 28 hours per week. While they do receive all legally mandated benefits (such as Social Security and unemployment insurance), they are ineligible for all of OLX other benefit programs.

(Doc. 62-1, PageID 1064.)  The Employee Handbook, therefore, provided generally that only full-time employees working at least 28 hours per week qualified for benefits, but benefits were subject to the terms of the specific benefit plan.  (*Id.*)  Additionally, the Employee Handbook did not directly address the benefit eligibility of employees taking short-term disability leave.

## 1. Medical Benefits Coverage

Pursuant to her employment, Schmidt became a covered person under a contract between Overland and Humana Health Plan of Ohio, Inc. ("Humana") providing medical benefits insurance coverage.  (Doc. 25-1, PageID 431; Doc. 25-3, PageID 539.)  Overland was identified as the sponsor of Group Plan No. 712609 ("the Plan") under the contract.  (Doc. 25-2, PageID 433.)

The Plan defined a "covered person" to be an employee "enrolled for benefits provided under the *master group contract*."  (Doc. 25-3, PageID 539.)  It defined an "employee" to be "person who is in *active status* for the *employer* on a *full-time* basis."  (*Id.*, PageID 543.)  However, *an* employee was "deemed to be in *active status* if an absence from work is due to *sickness* or *bodily injury*, provided the individual otherwise meets the definition of *employee*."  (*Id.*, PageID 536.)  Coverage terminated for an employee "the date he or she has terminated employment" or "the date he or she is no longer qualified as an employee."  (Doc. 25-2, PageID 500.)  Both the employee and the employer were "responsible to notify [Humana] of any

2

change in eligibility, including lack of eligibility, of any *covered person*."  (*Id.*)

The Plan provided for state continuation of benefits for a covered person whose

coverage terminated in certain circumstances.  (*Id.*, PageID 502.)  The right existed only so long

as coverage was terminated "for any reason other than involuntary termination for cause."

(*Id.*)  Individuals were required to apply in writing and pay the first premium for state

continuation of benefits within 31 days after coverage terminated.  (*Id.*, PageID 503.)  The plan

sponsor was responsible to submit the premium payments to Humana for state continuation of

benefits.  (*Id.*)

The Plan named Humana the "administrator for claims determinations and [the] ERISA

claims review fiduciary" with the following authority:

> **Discretionary authority**
> With respect to paying claims for benefits or determining
> eligibility for coverage under a policy issued by Humana, Humana
> as administrator for claims determinations and as ERISA claims
> review fiduciary, shall have full and exclusive discretionary
> authority to:
> • Interpret plan provisions;
> • Make decisions regarding eligibility for coverage and benefits;
> and
> • Resolve factual questions relating to coverage and benefits.

(Doc. 25-4, PageID 687.)  Elsewhere, the Plan provided that fiduciaries had "a duty to act

prudently and in the interest of plan participants and beneficiaries" and specifically stated that

an employer could not "discharge or otherwise discriminate against a plan participant in any

way to prevent the participant from obtaining a benefit to which the participant is otherwise

entitled under the plan."  (*Id.*, PageID 701.)

### 2. Schmidt's Medical Leave of Absence and Requests for Medical Benefits

On March 4, 2011, Schmidt's physician diagnosed her with a heart murmur during a

routine check-up and referred her to a cardiologist for an echocardiogram.  (Doc. 58-1, PageID

980.)  Schmidt states that she told Terese Brown about her diagnosis and need for an

echocardiogram that same day.  (*Id.*)  She alleges that she told Brown that she intended to keep

working because she needed her health insurance.  (*Id.*)

On March 5 or 6, 2011, Schmidt met with Jason Brown to discuss whether she was

meeting certain job requirements regarding her volume of sales calls.  (*Id.*; Doc. 62-1, PageID

1059–1060.)

Schmidt underwent an echocardiogram on March 11, 2011.  (Doc. 58-1, PageID 980–

981.)  Her physician informed her on March 12, 2011 that she had a severe aortic regurgitation

that would require extensive hospitalization and medical expenses.  (*Id.*, PageID 981.)  She

informed the Browns about her diagnosis that day.  (*Id.*)

Schmidt was hospitalized for two days on March 31 and April 1, 2011, but she

attempted to return to work on April 4, 2011.  (*Id.*, PageID 981.)  Jason Brown believed

Schmidt's speech was impaired the day she returned, and according to Schmidt, he accused her

of being high on narcotics.  (*Id.*; Doc. 62-1, PageID 1060.)  Schmidt agreed to begin a medical

leave of absence that day.  (Doc. 58-1, PageID 981; Doc. 62-1, PageID 1060.)  Of note, Schmidt

states that she only agreed to go on medical leave after receiving the following assurance from

Jason Brown:

> Jason told me that I was required to begin a medical leave on that day.  He
> further stated that Overland would continue to pay my health insurance
> premiums while I was on medical leave and that if Overland was unable to pay
> for the medical insurance, he personally would insure [*sic*] that the company
> would provide a COBRA notification or a state extension for the medical benefits
> along with short term and long term disability for me.

(Doc. 58-1, PageID 981.)  Schmidt was eligible for and received short-term disability benefits

while she was on medical leave.  (Doc. 58-3, PageID 985, 987.)

Schmidt called Humana on April 5, 2011 to verify that she still had medical benefits coverage.  (Doc. 62-1, PageID 1082–1087.)  Humana verified that her health insurance still was active.  (*Id.*, PageID 1083.)

Jason Brown testified at his deposition that he told Terese Brown that Schmidt was going on medical leave and Overland was going to hold her job open.  (Doc. 56, PageID 831.)  Terese Brown recalled only being told that Schmidt was not returning to the office, and she assumed that Schmidt had resigned.  (Doc. 57, PageID 928.)  Consistent with that understanding, Terese Brown mistakenly told Humana on or about April 6, 2011 that Schmidt had resigned from Overland on April 4.  (Doc. 57-1, PageID 941; Doc. 62-1, PageID 1060.)  The Humana representative responded that Schmidt's medical insurance ended, therefore, on April 4.  (Doc. 57-1, PageID 941.)  Terese Brown then discussed with the Humana representative that Schmidt could apply for state continuation of insurance benefits.  (*Id.*, PageID 943–944.)[1]

Terese Brown had a second conversation with a Humana representative on May 12, 2011 about state continuation of insurance benefits through Humana.  (Doc. 57-2, PageID 946.)  Terese Brown told the Humana representative that Overland had "an employee here that is out on medical leave" and "I got rid of her insurance because she is not a full time employee."  (*Id.*)  Overland had to complete a form verifying whether the employee was qualified for the benefits.  Terese Brown found no qualifying event for Schmidt to qualify for state continuation

---

[1] For his part, Jason Brown testified that he was not aware that Terese Brown mistakenly told Humana that Schmidt's employment had ended.  (Doc. 62-1, PageID 1061.)  Nonetheless, he told a prospective client in an email dated April 6, 2011 that "Tobi [Schmidt] is no longer with the company."  (*Id.*, PageID 1060; Doc. 25-5, PageID 705.)  Jason Brown explained that he made this statement because the prospective client did not need to know why Schmidt was not in the office.  (Doc. 62-1, PageID 1060.)

of benefits because her employment had not been involuntarily terminated.  (*Id.*, PageID 946–950.)  Terese Brown did not identify Schmidt as the employee out on medical leave during the conversation.  (*Id.*)

Terese Brown made a third call to Humana on May 13, 2011 to discuss whether the same employee was eligible for state continuation of benefits and her premium cost if she did.  (Doc. 57-3, PageID 951.)  The Humana representative stated that a person was not eligible for state continuation of benefits unless she met a specific qualifying event such as termination of employment.  (*Id.*, PageID 953–956.)  Terese Brown again stated several times during this call that the employee was not terminated, but she was on medical leave.  (*Id.*, PageID 951–954.)  She stated that the employee was not entitled to medical benefits coverage, however, because she was working less than 25 hours per week.  (*Id.*)  Although Terese Brown again did not refer to Schmidt by name during the call, the Humana representative appeared to know that the employee in question was Schmidt because he stated that her benefits had ended on April 4, 2011.  (*Id.*, PageID 952.)

Terese Brown admitted at her deposition that she never requested that Humana reinstate Schmidt's medical benefits under the Plan as a covered person and active employee.  (Doc. 57, PageID 930.)  She continued to believe that Schmidt was not entitled to medical benefits coverage while she was on medical leave because Overland's Employee Handbook limited eligibility for benefits to full-time employees working 28 hours per week.  (Id., PageID 930–931.)  She admitted that she did not know if an employee on medical leave would qualify for medical benefits under the terms of the Humana Plan itself.  (*Id.*, PageID 931.)

In a letter dated May 17, 2011, Terese Brown informed Schmidt that she did not qualify

for state continuation of benefits because she still was an employee of Overland.  (Doc. 62-1, PageID 1088.)

Schmidt hired an attorney to help her get her medical benefits coverage reinstated.  The attorney contacted Jason Brown on May 18, 2011 to request that Overland tell Humana that Schmidt was on short-term disability and had not ended her employment.  (Doc. 58-3, PageID 985.)  Jason Brown initially denied that Overland had stated that Schmidt was no longer employed.  (Doc. 58-4, PageID 987.)  In subsequent communications, he stated that Humana made the decision to deny Schmidt coverage, but he also argued that Schmidt was not entitled to medical benefits coverage while on medical leave because the Employee Handbook provided benefits only to full-time employees.  (Doc. 56-1, PageID 884–885; Doc. 58-5, PageID 988.)

Jason Brown terminated Schmidt's employment from Overland on December 13, 2011.  (Doc. 62-1, PageID 1059.)  In the termination letter, he accused Schmidt of making threatening social media posts against Overland and two of its executive employees.  (Doc. 25-5, PageID 716.)  Schmidt contended that she incurred $152,762.84 in medical expenses that should have been covered under the Plan during the course of her employment.  (Doc. 58-1, PageID 983; Doc. 58-8, PageID 991–1002.)

B.    **Procedural History**

Plaintiff filed a First Amended Complaint against Overland, the Browns, and Humana on May 23, 2013.  (Doc. 25).  She asserted the following claims for relief:

Count One—ERISA, 29 U.S.C. 1132(a)(1)(B);

Count Two—ERISA Request for Injunctive and Other Appropriate Relief, 29 U.S.C. § 1132(a)(3);

Count Three—ERISA Interference with Plaintiff's Benefit Rights, 29 U.S.C. § 1140;

> Count Four—Disability Discrimination in violation of Ohio Revised Code chapter 4112;
>
> Count Five—Fraud;
>
> Count Six—Violation of ERISA against Humana;
>
> Count Seven—Breach of Fiduciary Duty against Humana; and
>
> Count Eight—Breach of Duty of Good Faith against Humana.

(*Id.*)

While this litigation was pending, in or about late 2015, Humana began an administrative appellate review of the denial of benefits to Schmidt, including a review of her medical records.  (Doc. 38.)  The parties did not inform the Court on the record about the result of this administrative review.  Schmidt voluntarily dismissed Counts Six, Seven, and Eight against Humana, on March 31, 2017.  (Doc. 53.)  Only the claims against Overland and the Browns remain.

Four months later, Schmidt filed the pending Motion for Summary Judgment as to Counts One, Four, and Five only.[2]  Jason and Terese Brown filed a *pro se* Response in opposition on behalf of themselves only after their legal counsel had withdrawn its representation.  Overland was precluded from proceeding *pro se*, and it did not file a responsive brief.[3]

## II.    Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[2]  Schmidt did not move for summary judgment on her ERISA claims pursuant to 29 U.S.C. § 1132(a)(3) in Count Two and 29 U.S.C. § 1140 in Count Three.

[3]  A corporation cannot proceed *pro se* and cannot be represented by an officer of the corporation.  *See Gerber v. Riordan*, 649 F.3d 514, 516 (6th Cir. 2011); *Harris v. Akron Dep't of Public Health*, 10 F. App'x 316, 319 (6th Cir. 2001).

entitled to judgment as a matter of law."  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–249 (1986).

III.  **Analysis**

A.    **Count One—ERISA Request for Benefits**

ERISA provides a private right of action to "a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  A § 1132(a)(1)(B) claim for benefits can be made against the ERISA plan itself, the administrator, or a fiduciary.  *See, Pikas v. Williams Cos., Inc.*, 542 F. Supp. 2d 782, 785 (S.D. Ohio 2008); *Dirkes v. Cont'l Cas. Co.*, No. 1:05CV254, 2006 WL 2381444, at *3 (S.D. Ohio Aug. 16, 2006).  The plan administrator is defined in ERISA as the person designated under the terms of the ERISA plan, and if the administrator is not so designated, then the plan sponsor.  29 U.S.C. § 1002(16)(A)(i).  A fiduciary is a person who exercises "discretionary authority or discretionary control respecting management of such [ERISA] plan."  29 U.S.C. § 1002(21).  A fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries."  29 U.S.C. § 1104(a)(1).

Schmidt alleges that Overland and the Browns should be liable for the payment of benefits pursuant to § 1132(a)(1)(B).  She contends that Overland and the Browns made the

decision to deny coverage and benefits to her.  She also argues that they breached their

fiduciary duties by initially telling Humana that Schmidt resigned her employment on April 4,

2011, and then by failing to instruct Humana that Schmidt was eligible for coverage under the

Plan as an active employee on medical leave.  In response, the Browns argue that Humana was

the decisionmaker and that they correctly informed Humana in May 2011 that she still was

employed by Overland.

The Plan identified Humana as the administrator of the Plan with the exclusive authority

to make decisions and resolve factual questions regarding eligibility for coverage.  (Doc. 25-4,

PageID 687.)  However, an employer can be deemed an administrator or fiduciary to the extent

that it exercises control over administration of the plan or the determination of benefits.  *See*

*Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006) (also describing the definition

of a fiduciary to be "functional" and not based on "formal designations"); *Pikas*, 542 F. Supp. 2d

at 785 (allowing a claim against a *de facto* administrator, not just the named administrator).

Such an employer is a proper party under § 1132(a)(1)(B).  *See Daniel v. Eaton Corp.*, 839 F.2d

263, 266 (6th Cir. 1988) ("Unless an employer is shown to control administration of a plan, it is

not a proper party defendant in an action concerning benefits."); *Sweet v. Consol. Aluminum*

*Corp.*, 913 F.2d 268, 272 (6th Cir. 1990) (finding the employer was a proper party because it had

some control over the decision to pay benefits).  Overland was identified as the plan sponsor in

the Plan, (Doc. 25-2, PageID 433), and was prohibited from "discharge[ing] or otherwise

discriminat[ing] against a plan participant in any way to prevent the participant from obtaining

a benefit," (Doc. 25-4, PageID 701.)  The Plan required Overland, as the employer, to notify

Humana as to the change of eligibility, including lack of eligibility, of any covered person.  (Doc. 25-2, PageID 500.)

Some facts suggest that the Humana relied on representations by the Browns, who were acting in their role as Overland executives, to determine who was eligible for coverage and benefits.  After Terese Brown mistakenly told Humana that Schmidt had resigned on April 4, 2011, Humana terminated Schmidt's coverage under the Plan.  This coverage termination seems correct under the terms of the Plan based on what Humana had been told.  The Plan provided coverage for employees in active status for the employer on a full-time basis.  (Doc. 25-3, PageID 539, 543.)  Coverage terminated for an employee on "the date he or she has terminated employment" or "the date he or she is no longer qualified as an employee."  (Doc. 25-2, PageID 500.)

Terese Brown corrected her initial misstatement in May 2011 by telling Humana several times that Schmidt was employed, but on medical leave.[4]  Schmidt would appear to have been covered under the Plan at that point as an active employee because employees absent from work due to sickness remained active employees.  (Doc. 25-3, PageID 536, 543.)  Despite the Plan language, Humana did not reinstate Schmidt's coverage after learning that she was on medical leave.  Two factors may have influenced that decision.  First, Humana appeared to focus on whether Schmidt was entitled to state continuation of benefits, not on whether her coverage under the Plan should have been terminated.  Second, Terese Brown told Humana

---

[4]  To be clear, Terese Brown did not identify Schmidt by name during the conversations, but a reasonable inference can be made that Humana knew Schmidt was the employee in question because the Humana representative knew that the employee's benefits had been terminated on April 4, 2011.

that Schmidt was not eligible for medical benefits because she was not working full-time for at least 28 hours per week.

Nonetheless, these facts set forth by Schmidt do not conclusively establish that Overland and/or the Browns influenced or made the decision to deny coverage to Schmidt under the Plan. The parties have not submitted evidence from Humana, such as deposition or affidavit testimony, establishing why Humana did not change Schmidt's coverage status after it was told that she remained an Overland employee. Moreover, the Court cannot disregard the plain language in the Plan granting Humana the sole authority to determine eligibility for coverage and to make benefit decisions. (Doc. 25-4, PageID 687.) In fact, counsel for Schmidt informed the Court during the course of the litigation that Humana was "completing its administrative review of the [medical] records and other materials" as part of its "appellate review of the denial of benefits." (Doc. 38.) This suggests that Humana made the benefits decision. If Humana exercised exclusive authority to determine Schmidt's eligibility for coverage and right to benefits, then Overland and Brown cannot be held liable in a § 1132(a)(1)(B) claim for benefits. *See Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 842 (6th Cir. 2007) ([The employer] cannot be sued under 29 U.S.C. § 1132(a)(1)(B) because [the administrator] was solely responsible for the denial of benefits.") Because material facts remain in dispute as to whether Overland or the Browns made the decision to deny coverage and benefits to Schmidt, the Court will deny summary judgment to Schmidt on Count One.[5]

---

[5] The Court notes that there is no right to a jury trial in an appeal of an ERISA claim denial. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998).

Finally, to the extent that Schmidt contends that Overland and the Browns should be liable for breaching their fiduciary duties apart from denying them benefits under the Plan, the Court notes that Schmidt pleaded three separate ERISA claims in Counts One, Two, and Three. Schmidt did not move for summary judgment on her ERISA claims pursuant to 29 U.S.C. § 1132(a)(3) in Count Two or 29 U.S.C. § 1140 in Count Three. The Court expresses no opinion as to whether Schmidt could establish liability or damages against Defendants on these claims.

A private right of action exists for participants and beneficiaries "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) acts as "a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). It can be used to redress breaches of a fiduciary duty. *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 370 (6th Cir. 2015) (*en banc*). Equitable relief under § 1132(a)(3) is "is not ordinarily appropriate where Congress has elsewhere provided adequate means of redress for a claimant's injury." *Id.* at 371. In unusual circumstances, a plan participant was permitted to bring a claim for equitable relief against his employer for breach of fiduciary duties pursuant to § 1132(a)(3) where he could not pursue a claim for benefits against the employer. *Gore*, 477 F.3d at 841–842. The § 1132(a)(3) claim must be "based on an injury separate and distinct from the denial of benefits." *Rochow*, 780 F.3d at 372.

Additionally, "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which

he is entitled . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled." 29 U.S.C. § 1140. Claims for violations of § 1140 are enforced through § 1132. *Id.*

**B.** **Count Four—Disability Discrimination in Violation of the Ohio Revised Code**

In Count Four of the First Amended Complaint, Schmidt alleged disability discrimination in violation of Ohio Revised Code chapter 4112 on the basis that Overland and the Browns "lied to Humana relating to Plaintiff's employment status because they regarded [her] as disabled, terminated her medical benefits based upon her disability, and subsequently terminated her employment." (Doc. 25, PageID 425.) The Ohio Revised Code makes it unlawful for an employer, because of disability, "to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). The Ohio Administrative Code further provides that "[a]n employer may not discriminate on the basis of disability in providing fringe benefits to employees." Ohio Admin. Code § 4112-5-08(G).

Schmidt narrowed the focus of this claim considerably in the Motion for Summary Judgment. She seeks judgment insofar as she asserts that Overland and the Browns failed to allow her to remain under the Humana Plan and receive medical benefits when she was on medical leave because of her disability. (Doc. 58, PageID 976–977.) Defendants respond that the claim fails because Humana made the decision to deny benefits to Schmidt. The Court already has concluded that a genuine dispute of material fact exists as to who made the coverage and benefits decision.

14

Additionally, the state law claim appears to be preempted by ERISA. ERISA expressly supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This section is interpreted broadly. *See Authier v. Ginsberg,* 757 F.2d 796, 799 (6th Cir. 1985). The Supreme Court has provided a general framework to guide the analysis by defining a law that "relates to" an ERISA-covered plan as one that either (1) "references" such a plan or (2) has a "connection with" the plan. *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 324–325 (1997). In determining whether a claim "relates to" an employee benefits plan, the Court considers the kind of relief that plaintiffs seek, and its relation to the plan. *Ramsey v. Formica Corp.,* 398 F.3d 421, 424 (6th Cir. 2005).

Schmidt brings her disability discrimination claim to recover medical benefits under the Humana Plan, which both parties agree is an ERISA plan. She asserts that she is entitled to damages in the amount of $152,762.84 on her disability discrimination claim. (Doc. 58, PageID 977.) These damages represent a request for her medical benefits allegedly owed under the Plan. Schmidt asserted the following in her sworn Declaration:

> The medical providers are seeking payment from me personally for the bills that have been incurred since April 5, 2011, and which would have been paid but for Terese Brown's conduct in falsely informing Humana that I had resigned and Jason Brown's conduct in wrongfully refusing to contact Humana and reinstate my medical insurance. Attached hereto as Exhibit G is a true and accurate summary of the medical expenses I incurred, the amount paid by Humana, the write off or adjustments, the amount I paid and the balance that is due to the providers for the services rendered. I am seeking payment from the Defendants Overland, Jason Brown and Terese Brown in the amount of $152,762.84 for the outstanding medical expenses.

(Doc. 58-1, PageID 983.)

Schmidt's disability discrimination claim appears to relate to the Plan under the standards set forth above. A state law claim that is in essence a claim to recover ERISA plan benefits is preempted. *See*, *e.g.*, *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002) ("It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit."); *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (same). However, the Court need not reach a final determination. The Browns asserted the preemption defense in their Answer, but they did not raise it in their Response to the Motion for Summary Judgment. Schmidt was not on notice to brief the issue. It is enough here to determine that Schmidt is not entitled to summary judgment on the claim.

Accordingly, the Court will deny summary judgment to Schmidt on Count Four.

### C. Count Five—Fraud

Schmidt moves for summary judgment against Terese Brown on this claim. In the First Amended Complaint, Schmidt alleged that Jason Brown induced her to take medical leave by telling her that her medical benefits would continue, and she alleged that Terese Brown falsely told Humana that Schmidt had resigned from Overland for the purposes of terminating Schmidt's medical coverage. (Doc. 25, PageID 426.) However, Schmidt conceded in her Reply brief that disputed issues of fact preclude a holding against Jason Brown. (Doc. 65, PageID 1119.) As to her remaining fraud claim against Terese Brown, Schmidt is not entitled to summary judgment for the reasons that follow.

The ERISA preemption analysis set forth in regard to the state law disability discrimination claim applies to the state law fraud claim as well. Schmidt's claim that Terese

Brown falsely told Humana in April 2011 that she had resigned, a statement which Humana relied upon to terminate her coverage under the Plan, related to an ERISA plan for purpose of 29 U.S.C. § 1144(a).  Schmidt bases Count Three—ERISA claim for interference with the attainment of benefits pursuant to 29 U.S.C. § 1140—on the same factual predicate as the state law fraud claim.  Finally, the damages she seeks for the alleged fraud are the payment of her medical expenses which would have been covered under the Plan.  The fraud claim appears to be preempted under this analysis.

Even if the fraud claim is not preempted, Schmidt has not established that she is entitled to judgment in her favor on the merits.  The elements of fraud in Ohio are: (1) a representation (or a concealment where there is a duty to disclose), (2) that is material to the transaction, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to truth or falsity that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance on the representation (or concealment), and (6) a resulting injury proximately caused by the reliance.  *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St. 3d 494, 929 N.E.2d 434, 440 (2010).  Implicit in this standard recitation of the elements is that the defendant's false statement be made to the plaintiff and be relied upon by the plaintiff.  A plaintiff cannot support a fraud claim with a statement made by the defendant to a third party, and relied on by the third party, to the plaintiff's detriment.  *See*, *e.g.*, *Lucarell v. Nationwide Mut'l Ins. Co.*, 152 Ohio St. 3d 453, 97 N.E.3d 458, 473 (2018) (upholding a directed verdict against the plaintiff on a fraud claim based on a representation to a third party);  *Minaya v. NVR, Inc.*, 2017-Ohio-9019, ¶ 18, 103 N.E.3d 160, 166 (Ohio App.) (dismissing a fraud claim where the defendant did not make statements to the plaintiffs).

Schmidt's fraud claim is not based on a false statement by Terese Brown to her. Instead, she relies on Terese Brown's statement to Humana that she had resigned, a statement upon which Humana relied to terminate Schmidt's coverage under the Plan.  This is insufficient to support a fraud claim by Schmidt.  *See Lucarell*, 97 N.E.3d at 469; *Minaya*, 103 N.E.3d at 166.

Accordingly, the Court will deny summary judgment to Schmidt on Count Five.

IV.     **Conclusion**

In light of the foregoing, it is hereby **ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 58) is **DENIED**.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court