IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Tobi Schmidt, :
:
    Plaintiff, : Case No. 1:12-cv-397
:
    v. :
: Judge Michael R. Barrett
Overland Xpress, LLC, *et al.*, :
:
    Defendants. :

**OPINION AND ORDER**

This matter is before the Court on Defendants Jason Brown's and Terese Brown's Motion for Summary Judgment (Doc. 78) and Plaintiff Tobi Schmidt's Motion for Judgment (Doc. 79) on her claims against Defendant Overland Xpress, LLC ("Overland") only.

**I.    Background**

    **A.    Factual History**

The factual background of this case was set forth in detail in the Court's September 28, 2020 Opinion and Order (Doc. 69) denying summary judgment to Plaintiff Tobi Schmidt. A summary will be presented here.

Schmidt was employed by Overland from August 2010 until December 13, 2011. Defendant Jason Brown was the CEO of Overland, and Defendant Terese Brown was the Chief Human Resources Officer for the company. (Doc. 58-1, PageID 980.) Pursuant to her employment, Schmidt became a covered person under a contract between Overland and Humana Health Plan of Ohio, Inc. ("Humana") providing medical benefits insurance coverage. (Doc. 25-1, PageID 431; Doc. 25-3, PageID 539.) Overland was identified as the sponsor of

1

Group Plan No. 712609 ("the Plan") under the contract. (Doc. 25-2, PageID 433.) Humana was the named administrator of the Plan with discretionary authority over coverage and benefits:

> With respect to paying claims for benefits or determining eligibility for coverage under a policy issued by Humana, Humana as administrator for claims determinations and as ERISA claims review fiduciary, shall have full and exclusive discretionary authority to:
>
> • Interpret plan provisions;
> • Make decisions regarding eligibility for coverage and benefits; and
> • Resolve factual questions relating to coverage and benefits.

(Doc. 25-4, PageID 687.)

Schmidt asserts that she was wrongly denied more than $150,000 in medical benefits under the Plan during the term of her employment. (Doc. 58-1, PageID 983; Doc. 58-8, PageID 991–1002.) The parties' dispute centers on Schmidt's eligibility for medical benefits coverage when she took a disability or medical leave of absence from work. The Employee Handbook provided to Schmidt by Overland stated that benefits were provided to employees regularly scheduled to work full time "subject to the terms, conditions, and limitations of each benefit program." (Doc. 62-1, PageID 1064.) It further provided that certain benefits were not provided to employees who were regularly scheduled to work part time less than twenty-eight hours per week. (*Id.*) The Employee Handbook did not address the benefit eligibility of employees taking medical or disability leaves of absence.

On the other hand, the Plan provided coverage to employees who "were in active status for the employer on a full-time basis." (Doc. 25-3, PageID 539, 543.) It further stated that employees were "deemed to be in *active status* if an absence from work is due to *sickness* or *bodily injury*, provided the individual otherwise meets the definition of *employee*." (*Id.*, PageID 536.) Coverage under the Plan terminated upon the occurrence of defined conditions,

including on "the date [the employee] has terminated employment" or "the date he or she is no longer qualified as an employee." (Doc. 25-2, PageID 500.) Being placed on medical leave was not one of the defined conditions for termination of coverage.

The Plan required Overland and the employee to notify Humana as to "any change of eligibility, including lack of eligibility, of any covered person." (*Id.*) Read in context within the "Termination of coverage" provision, this section required Overland and the employee to inform Humana when an employee had "terminated employment with the employer." (*Id.*) The Plan also prohibited Overland from "discharge[ing] or otherwise discriminat[ing] against a plan participant in any way to prevent the participant from obtaining a benefit." (Doc. 25-4, PageID 701.)

Schmidt agreed to take a leave of absence from her employment with Overland starting on April 4, 2011 due to ongoing medical issues related to a heart problem. Of note, Schmidt contends that she only agreed to take leave after receiving the following assurance from Jason Brown:

> Jason told me that I was required to begin a medical leave on that day. He further stated that Overland would continue to pay my health insurance premiums while I was on medical leave and that if Overland was unable to pay for the medical insurance, he personally would insure [*sic*] that the company would provide a COBRA notification or a state extension for the medical benefits along with short term and long term disability for me.

(Doc. 58-1, PageID 981.)

On April 6, 2011, Terese Brown erroneously told Humana that Schmidt had resigned her employment two days earlier, and Humana immediately terminated Schmidt's medical benefits coverage under the Plan effective April 4. (Doc. 57-1, PageID 941.) Schmidt sought state continuation of medical benefits while she was on leave, and the Browns fulfilled their role in

3

the application process, but she was ineligible under state law. (Doc. 62-1, PageID 1088.) On the other hand, Schmidt was eligible for and received short-term disability benefits while she was on medical leave. (Doc. 58-3, PageID 985, 987.)

Schmidt remained on leave of absence until December 13, 2011. Jason Brown terminated Schmidt's employment effective that day after, he alleges, she made threatening social media posts against Overland and two executive employees. (Doc. 25-5, PageID 716.)

**B.     Procedural Posture**

Schmidt filed this suit against Overland, the Browns, and Humana. While this litigation was pending, in or about late 2015, Humana conducted an administrative appellate review of the denial of benefits to Schmidt, including a review of her medical records. (Doc. 38.) Thereafter, Schmidt voluntarily dismissed her claims against Humana on March 31, 2017. (Doc. 53.) The following claims asserted in the First Amended Complaint remain against Overland and the Browns:

Count One—ERISA, 29 U.S.C. § 1132(a)(1)(B);

Count Two—ERISA Request for Injunctive and Other Appropriate Relief, 29 U.S.C. § 1132(a)(3);

Count Three—ERISA Interference with Plaintiff's Benefit Rights, 29 U.S.C. § 1140;

Count Four—Disability Discrimination in violation of Ohio Revised Code chapter 4112; and

Count Five—Fraud.

(Doc. 25, PageID 421–426.)

Schmidt moved for summary judgment as to Counts One, Four, and Five only following the initial discovery period. (Doc. 58.) The Browns, representing themselves *pro* se, opposed the motion. Overland, because it was not represented by counsel, did not file a brief in

opposition. The Court denied summary judgment to Schmidt on Count One because genuine issues of fact remained in dispute and on Counts Four and Five because the state law claims appeared to be preempted by ERISA. (Doc. 69.) Thereafter, the Court gave the parties leave to conduct additional discovery and to file additional motions for summary judgment.

The Browns, *pro se*, now move for summary judgment on Counts One through Five. Schmidt also moves for judgment, but only against Overland on the sole basis that Overland failed to retain counsel. The motions are fully briefed and ripe for adjudication.

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–249 (1986).

## III. Analysis

### A. The Browns' Motion for Summary Judgment

#### 1. Count One—ERISA Request for Benefits

In Count One of the First Amended Complaint, Schmidt alleges that Overland was the Plan administrator, sponsor, and fiduciary, and that Overland is responsible under 29 U.S.C. § 1132(a)(1)(B) for the payment of her medical expenses. (Doc. 25, PageID 421–423.) Because

the parties treat this claim as if Schmidt also asserted it against the Browns personally, the Court will do the same. ERISA provides a private right of action to "a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A § 1132(a)(1)(B) claim for benefits can be made against the ERISA plan itself, the administrator, or a fiduciary. *See Pikas v. Williams Cos., Inc.*, 542 F. Supp. 2d 782, 785 (S.D. Ohio 2008); *Dirkes v. Cont'l Cas. Co.*, No. 1:05CV254, 2006 WL 2381444, at *3 (S.D. Ohio Aug. 16, 2006). The plan administrator is defined in ERISA as the person designated under the terms of the ERISA plan, and if the administrator is not so designated, then the plan sponsor. 29 U.S.C. § 1002(16)(A)(i). A fiduciary is a person who exercises "discretionary authority or discretionary control respecting management of such [ERISA] plan." 29 U.S.C. § 1002(21).

Upon consideration of the evidence, the Browns are not the proper defendant on the § 1132(a)(1)(B) claim for benefits. The Plan identified Humana as the administrator of the Plan with the exclusive authority to make decisions and resolve factual questions regarding eligibility for coverage and benefits. (Doc. 25-4, PageID 687.) Andrea Harvel, the Commercial/Medicare Resolution Manager, Grievance and Appeals Operations for Humana, stated in a sworn Declaration that "Humana administered health benefits to employees of [Overland], including Tobi Schmidt." (Doc. 82, PageID 1316.) Consistent with the terms of the Plan, Humana relied on Overland to inform it when a person was no longer employed by Overland, (Doc. 25-2, PageID 500), but Humana had the sole authority to decide issues of coverage and benefits. For example, Harvel stated that Humana concluded that "no plan benefits were available" to Schmidt after April 4, 2011 because "Overland represented to Humana that the plan benefits

6

for Tobi Schmidt terminated" effective that date. (Doc. 82, PageID 1316.) Humana issued an Explanation of Benefits to Schmidt dated May 8, 2011 denying coverage for medical bills she incurred on April 26, 2011 because "[c]harges for services received after your coverage has ended are not covered." (Doc. 78-1, PageID 1296–1297.)

Moreover, during the course of this litigation, Humana "complet[ed] its administrative review of the [medical] records and other materials" as part of its "appellate review of the denial of benefits." (Doc. 38, PageID 777.) Humana denied the appeal. Harvel, on behalf of Humana, informed Schmidt in a letter dated December 21, 2015 that "[her] plan terminated with Humana on April 4, 2011, based on [the] representation of the employer." (Doc. 78-1, PageID 1300.)

The objective evidence eliminates any reasonable dispute of fact. Humana controlled the decision to deny Schmidt's claims for medical benefits under the Plan, so the Browns cannot be liable under § 1132(a)(1)(B). *See Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir. 1988) ("Unless an employer is shown to control administration of a plan, it is not a proper party defendant in an action concerning benefits."); *Sweet v. Consol. Aluminum Corp.*, 913 F.2d 268, 272 (6th Cir. 1990) (finding the employer was a proper party because it had some control over the decision to pay benefits). Schmidt voluntarily dismissed its ERISA claims against Humana foreclosing relief under § 1132(a)(1)(B).

The conclusion that the Browns cannot be liable under § 1132(a)(1)(B) is consistent with the remedial scheme of § 1132. A claim against a plan, a plan administrator, or a plan fiduciary pursuant to § 1132(a)(1)(B) is a claim for benefits under the Plan. District courts review such claims by making a *de novo* or arbitrary and capricious review of the administrative record to

determine the claimant's entitlement to plan benefits.  *See Castor v. AT & T Umbrella Benefit Plan No. 3*, 728 F. App'x 457, 462–463 (6th Cir. 2018); *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 430 (6th Cir. 2006) (relying on *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609 (6th Cir. 1998) (Gilman, J., concurring)).  Also, compensatory damages are not available under § 1132(a)(1)(B).  Here, the review of the administrative record would be a review of the record compiled and reviewed by Humana.  There is no evidence that the Browns controlled the administration of the Plan.  They did not make the decision to deny benefits under the Plan to Schmidt, and they do not control the Plan in such a way that they could pay Plan benefits to her now.  This does not mean that Schmidt cannot seek a remedy against the Browns or Overland for their alleged wrongdoing.  The Court simply finds as a matter of law that Schmidt cannot prove a claim for benefits pursuant to § 1132(a)(1)(B) against the Browns.  Accordingly, the Court will grant summary judgment to the Browns on Count One.

### 2. Count Two–ERISA Request for Injunctive Relief

In Court Two, Schmidt brings a claim against the Browns and Overland under 29 U.S.C. § 1132(a)(3) for injunctive or other appropriate relief.  (Doc. 25, PageID 423.)  A private right of action exists for participants and beneficiaries "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Section 1132(a)(3) can be used to redress breaches of a fiduciary duty.  *See Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 370 (6th Cir. 2015) (*en banc*).  ERISA requires fiduciaries to discharge their duties with respect to a plan "for the exclusive purpose of:  providing benefits to participants and their beneficiaries" and to act

with the "care, skill, prudence, and diligence" of a "prudent man." 29 U.S.C. § 1104(a)(1)(A) & (B).

The Browns move for summary judgment on the grounds that Schmidt cannot bring a § 1132(a)(3) claim for equitable relief that is duplicative of a § 1132(a)(1)(B) claim for benefits. Section 1132(a)(3) acts as "a safety net, offering appropriate equitable relief for injuries caused by violations that § [1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). The Sixth Circuit stated in *Rochow* that "[a] claimant can pursue a breach-of-fiduciary-duty claim under § [1132](a)(3), irrespective of the degree of success obtained on a claim for recovery of benefits under § [1132](a)(1)(B), *only* where the breach of fiduciary duty claim is based on an *injury separate and distinct* from the denial of benefits or where the remedy afforded by Congress under § [1132](a)(1)(B) is otherwise shown to be inadequate." 780 F.3d at 372 (emphasis added). Stated differently, "if § 1132(a)(1)(B) provides the entire remedy for a plaintiff's claims, then the plaintiff cannot also seek relief under § 1132(a)(3)." *Moss v. Unum Life Ins. Co.*, 495 F. App'x 583, 589–590 (6th Cir. 2012). The Sixth Circuit added in *Moss* that the "deciding factor . . . is not whether a plaintiff has recovered under § 1132(a)(1)(B), but rather, whether a plaintiff may recover." *Id.*

Here the sole injury to Schmidt was the denial of Plan benefits. An award of Plan benefits under § 1132(a)(1)(B) would provide a complete remedy for Schmidt's injury. The fact that she now is foreclosed from seeking the § 1132(a)(1)(B) remedy in this lawsuit because she dismissed the claim against Humana is not dispositive. She cannot seek an equitable remedy under the § 1132(a)(3) safety net provision when her injury would be remedied by § 1132(a)(1)(B) benefits. The Court will grant summary judgment to the Browns on Count Two.

### 3. Count Three—ERISA Interference with Plaintiff's Benefit Rights

Schmidt alleges in Count Three that Defendants interfered with her rights to obtain benefits under the Plan and retaliated against her for exercising ERISA rights, both in violation of 29 U.S.C. § 1140. (Doc. 25, PageID 423–425.) It is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled." 29 U.S.C. § 1140. The provisions of § 1132 are "applicable to the enforcement" of § 1140. *Id.*

To state a prima facie case for ERISA interference, a plaintiff "must show: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Bailey v. U.S. Enrichment Corp.*, 530 F. App'x 471, 477 (6th Cir. 2013) (citation omitted). To state a prima facie case for ERISA retaliation, a plaintiff must show "(1) she was engaged in activity that ERISA protects; (2) she suffered an adverse employment action; and (3) a causal link exists between her protected activity and the employer's adverse action." *Hamilton v. Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 628 (6th Cir. 2008). A plaintiff must "show[] enough to create a rebuttable presumption such that the employer must then produce evidence supporting a legitimate, non-discriminatory reason for the [adverse act]." *Crawford v. TRW Auto. U.S. LLC*, 560 F.3d 607, 613–614 (6th Cir. 2009). Then, at the pretext stage, a plaintiff must prove that "an adverse action ... was taken with the specific intent of violating ERISA." *Spangler v. E. Ky. Power Coop., Inc.*, 790 F. App'x 719, 721 (6th Cir. 2019) (internal quotation and citation omitted).

In the unique circumstances of this case, there is a disputed issue of material fact

whether the Browns interfered with Schmidt's attainment of benefits by misstating her eligibility for coverage under the Plan to Humana. Overland was required by the Plan to appraise Humana of any change to an employee's eligibility, such as termination of employment, and to not discriminate against a plan participant to prevent them from obtaining benefits. (Doc. 25-2, PageID 500; Doc. 25-4, PageID 701.) Additionally, causing a "significant change in benefits" can constitute an adverse employment action under general employment law standards. *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 798 (6th Cir. 2004) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)), *aff'd sub nom. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

Evidence suggests that the Browns interfered with Schmidt's attainment of benefits in violation of ERISA and the terms of the Plan. First, Terese Brown falsely told Humana that Schmidt resigned her employment on April 4, 2011. The Humana representative immediately informed Terese Brown that Schmidt's medical benefits under the Plan were terminated as of that date. (Doc. 57-1, PageID 941.) Second, even after the Browns correctly informed Humana in May 2021 that Schmidt was employed but out on medical leave, they continued to assert that she was ineligible for medical benefits under the Plan. A few examples will suffice. Terese Brown told a Humana representative on a May 12, 2011 call that she "had an employee out on medical leave" and that she "got rid of [the employee's] insurance because she is not a full time employee." (Doc. 62-1, PageID 1074.) Jason Brown stated during a May 23, 2011 conference call with Schmidt, her attorney, and a Humana representative that "[Schmidt was] no longer working full-time hours therefore making [her] ineligible for our group plan." (Doc. 78-1, PageID 1285.) The Browns made these statements during the course of conversations about

11

whether Schmidt was eligible to obtain state continuation of benefits through the Plan. There is no evidence that the Browns told Humana that Schmidt should be reinstated to the Plan as an employee entitled to benefits.

As to the latter issue, the Browns relied on a misreading of Overland's Employee Handbook. (Doc. 57, PageID 930, 934.) The Employee Handbook provided that employees regularly working a full-time schedule were entitled to benefits "subject to the terms, conditions, and limitations of each benefit plan." (Doc. 62-1, PageID 1064.) Although it also stated that employees who were regularly scheduled work less than twenty-eight hours per week were not entitled to certain benefits, there is no evidence that Schmidt was regularly scheduled to work only part-time hours. (*Id.*) Moreover, the Employee Handbook did not address benefits for employees on medical or disability leave. The Plan, however, provided coverage to employees on active status, and included employees absent from work due to sickness or bodily injury as being deemed on active status. (Doc. 25-3, PageID 536, 539, 543.) Based on these provisions, the Browns were incorrect to insist that Schmidt was not eligible for medical benefits under the Plan when she was on medical leave.[1]

Other evidence suggests that the Browns may have had specific intent to interfere with Schmidt's attainment of Plan benefits. Terese Brown sought to disclaim any financial or administrative responsibility on behalf of Overland if Schmidt sought state continuation of her benefits through the Plan after her coverage was cancelled. Brown asked a Humana representative if Overland had to offer Schmidt the right to seek state continuation of benefits:

---

[1] The Court does not address why Humana did not change Schmidt's status back to Plan eligible when it learned she was employed but on medical leave. Schmidt voluntarily dismissed her claims against Humana.

12

> What if we like say what if I didn't want that person to be on our bill. I don't have a choice?
>
> * * *
>
> And we have to offer that[,] correct?

(Doc. 57-1, PageID 944.) Upon being told that Overland had to act as the intermediary for the payment of fees for state continuation benefits, Terese Brown asked if Overland could be removed from the process:

> [P]er Humana I have to send you this check. Now I don't if somebody not here and they are getting state continuation why is my company having to be in the middle of it[?] I do not want to have anything to do with that. Can't the old employee and the like Humana just deal with that[?] Like why does my company have to be in the middle of that if they are no longer an employee?

(Doc. 58-2 at PageID 948.)

Additionally, Jason Brown told a potential customer in an email dated April 4, 2006 that Schmidt was no longer employed by Overland. (Doc. 62-1, PageID 1060; Doc. 84-1, PageID 1353.) Schmidt argues that this shows that Terese Brown intentionally, not mistakenly, told Humana that she was no longer employed. A Hamilton County Sheriff's Office report from December 2011 indicates that Jason Brown also told an officer that he cancelled Schmidt's medical insurance in April 2011 because she refused to come to work. (Doc. 56-2, PageID 900.) The Browns might offer reasonable explanations for these statements, but together they create a genuine disputed issue of fact as to the Browns' intent. For these reasons, the Browns are not entitled to summary judgment to the extent that Schmidt alleges they interfered with her attainment of benefits in violation of § 1140.

However, the Browns are entitled to summary judgment on Count Three to the extent that Schmidt alleges that they fired her in December 2011 to retaliate against her for pursuing

ERISA benefits while on medical leave.  This subclaim fails for lack of proof.  The Browns consistently have asserted that Schmidt was terminated for making threats on social media against Terese Brown and another Overland officer.  (Doc. 25-5, PageID 716.)  Terese Brown sought an *ex parte* civil stalking order against Schmidt in the Hamilton County, Ohio Court of Common Pleas on or about December 14, 2011.  (Doc. 78-1, PageID 1293.)  Schmidt has not come forward with any evidence that this stated reason for her termination was pretextual and that the Browns terminated her eight months after she began medical leave to retaliate against her for seeking ERISA Plan benefits.

Because the Court is denying summary judgment to the Browns on the § 1140 claim in part, the parties will proceed to a bench trial on the ERISA interference claim.  There is no right to a jury trial under 29 U.S.C. § 1140.  *See Menovcik v. BASF Corp.*, No. 09-12096, 2011 WL 4945764, at *7 (E.D. Mich. Oct. 18, 2011) (finding no right to a jury); *Vargas v. Child Dev. Council of Franklin Cty., Inc.*, 269 F. Supp. 2d 954, 958 (S.D. Ohio 2003) (recognizing a split in authority, but concluding "there is no right to a jury trial for a claim under § 1140").

### 4.    Count Four—Disability Discrimination in Violation of Ohio Law

In Count Four of the First Amended Complaint, Schmidt alleges disability discrimination in violation of Ohio Revised Code chapter 4112 on the basis that Overland and the Browns "lied to Humana relating to Plaintiff's employment status because they regarded [her] as disabled, terminated her medical benefits based upon her disability, and subsequently terminated her employment."  (Doc. 25, PageID 425.)  The Ohio Revised Code makes it unlawful for an employer, because of disability, "to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges

14

of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A).

The Browns move for summary judgment on the basis of ERISA preemption. ERISA expressly supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This section is interpreted broadly. *See Authier v. Ginsberg,* 757 F.2d 796, 799 (6th Cir. 1985). The Supreme Court has provided a general framework to guide the analysis by defining a law that "relates to" an ERISA-covered plan as one that either (1) "references" such a plan or (2) has a "connection with" the plan. *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.*, 519 U.S. 316, 324–325 (1997). In determining whether a claim "relates to" an employee benefits plan, the Court considers the kind of relief that plaintiffs seek, and its relation to the plan. *Ramsey v. Formica Corp.,* 398 F.3d 421, 424 (6th Cir. 2005).

Schmidt brings her disability discrimination claim to recover medical benefits under the Humana Plan, which both parties agree is an ERISA plan. She asserted in the first round of summary judgment briefing that she is entitled to damages in the amount of $152,762.84 on her disability discrimination claim. (Doc. 58, PageID 977.) These damages represent a request for her medical benefits allegedly owed under the Plan. Schmidt asserted the following in her sworn Declaration:

> The medical providers are seeking payment from me personally for the bills that have been incurred since April 5, 2011, and which would have been paid but for Terese Brown's conduct in falsely informing Humana that I had resigned and Jason Brown's conduct in wrongfully refusing to contact Humana and reinstate my medical insurance. Attached hereto as Exhibit G is a true and accurate summary of the medical expenses I incurred, the amount paid by Humana, the write off or adjustments, the amount I paid and the balance that is due to the providers for the services rendered. I am seeking payment from the Defendants

15

> Overland, Jason Brown and Terese Brown in the amount of $152,762.84 for the outstanding medical expenses.
>
> I am also requesting compensatory damages in the amount of $100,000, punitive damages in the amount of $100,000, and that my attorneys be paid their attorneys fees.

(Doc. 58-1, PageID 983.)

Schmidt's disability discrimination relates to the Plan under the standards set forth above to the extent she alleges that Defendants lied to Humana about her employment status and terminated her medical benefits. This state law claim is primarily a claim to recover ERISA plan benefits, and it therefore is preempted. *See*, *e.g.*, *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002) ("It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit."); *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) (same).

In this second round of summary judgment briefing, Schmidt contends that her disability discrimination claim is not preempted to the extent that she alleges that Defendants terminated her in December 2011 based her disability. She asserts that she seeks damages unrelated to ERISA pursuant to Ohio Revised Code § 4112.99. This subclaim fails for lack of proof. As stated above, the Browns have produced evidence that they terminated Schmidt in December 2011 for making threats. (Doc. 25-5, PageID 716; Doc. 78-1, PageID 1293.) Schmidt has not come forward with any evidence that this stated reason for her termination was pretextual and that the Browns terminated because of her medical condition or disability.

Accordingly, because the Ohio disability discrimination claim is preempted in part and fails on the merits in part, the Court will grant summary judgment to the Browns on Count Four.

### 5. Count Five—Fraud

In Count Five of the First Amended Complaint, Schmidt alleges that Jason Brown induced her to take medical leave by telling her that her medical benefits would continue, and she alleged that Terese Brown falsely told Humana that Schmidt had resigned from Overland for the purposes of terminating Schmidt's medical coverage. (Doc. 25, PageID 425–426.)[2] The ERISA preemption analysis set forth in regard to the state law disability discrimination claim applies to the state law fraud claims as well. Both fraud claims relate to the Plan and seek benefits under the Plan. The substance of the fraud claim against Jason Brown is that he falsely told Schmidt that she would continue to get her medical benefits under the Plan to induce her to take medical leave. Schmidt's claim against Terese Brown is that she falsely told Humana in April 2011 that Schmidt had resigned to induce Humana to terminate her coverage under the Plan. Both allegations relate to an ERISA plan for purposes of 29 U.S.C. § 1144(a). In fact, the allegation that Terese Brown misrepresented Schmidt's employment status is a factual predicate for both this fraud claim and for the ERISA claims. Finally, the damages she seeks for both fraud claims are the payment of her medical expenses which would have been covered under the Plan. The fraud claims are preempted by ERISA under this analysis.

The fraud claim based on Terese Brown's misrepresentation fails on a second, alternative basis as well. The elements of fraud in Ohio are: (1) a representation (or a concealment where there is a duty to disclose), (2) that is material to the transaction, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to truth or

---

[2] In the first round of summary judgment briefing, Schmidt conceded in her Reply brief that disputed issues of fact precluded granting summary judgment as a matter of law against Jason Brown on the fraud claim. (Doc. 65, PageID 1119.)

17

falsity that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance on the representation (or concealment), and (6) a resulting injury proximately caused by the reliance. *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St. 3d 494, 929 N.E.2d 434, 440 (2010). A plaintiff cannot support a fraud claim with a statement made by the defendant to a third party, and relied on by the third party, to the plaintiff's detriment. *See*, *e.g.*, *Lucarell v. Nationwide Mut'l Ins. Co.*, 152 Ohio St. 3d 453, 97 N.E.3d 458, 473 (2018) (upholding a directed verdict against the plaintiff on a fraud claim based on a representation to a third party); *Minaya v. NVR, Inc.*, 2017-Ohio-9019, ¶ 18, 103 N.E.3d 160, 166 (Ohio App.) (dismissing a fraud claim where the defendant did not make statements to the plaintiffs); *McWreath v. Cortland Bank*, No. 2010-T-0023, 2012 WL 2522933, at *11, 2012-Ohio-3013 ¶ 63 (Ohio App.) ("[A] claim in fraud cannot be predicated upon statements or representations made to a third party."). Schmidt, therefore, cannot prove fraud based on a statement Terese Brown made to Humana. The Court will grant summary judgment to the Browns on Count Five for these reasons.

### B. Schmidt's Motion for Judgment

Turning now to Schmidt's Motion, Schmidt moves for judgment against Overland only on the grounds that the company has failed to retain counsel. This Court entered an Order on August 5, 2020 for Overland to show cause why judgment should not be entered against it for failing to secure legal counsel. (Doc. 66.) A corporation cannot proceed *pro se* and cannot be represented by an officer of the corporation. *See Gerber v. Riordan*, 649 F.3d 514, 516 (6th Cir. 2011); *Harris v. Akron Dep't of Public Health*, 10 F. App'x 316, 319 (6th Cir. 2001). At a conference held on August 26, 2020, the Browns stated that Overland was no longer in

business. This Court then ruled that it would not grant summary judgment against Overland by default unless Schmidt established that she was entitled to relief on the merits. A subsequent search of public records reveals that Overland was dissolved in September 2018. *See* Florida Department of State, Division of Corporations, http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=OVERLANDXPRESS%20L080000475710&aggregateId=flal-l08000047571-091d4792-80f3-42d8-a359-32a8a69a2d92&searchTerm=overland%20xpress&listNameOrder=OVERLANDXPRESS%20L08000047571 (last viewed 5/12/2021).[3]

Schmidt has not, and cannot, establish that she is entitled to judgment against Overland on Counts One, Two, Four, and Five. As to Count One, the Court has determined that Humana is the proper defendant in a claim for benefits pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B). As to Count Two, the Court has found that the 29 U.S.C. § 1132(a)(3) claim fails as a matter of law because it is duplicative of Count One and seeks to remedy the same injury. As to Count Four, the Court has concluded that Schmidt's disability discrimination claim is preempted in part and fails on the merit in part. Finally, Count Five, likewise, is preempted in the entirety and fails on the merits in part. The Court cannot grant judgment to Schmidt on claims that are legally

---

[3] An entity with the same name was organized under Florida law in December 2020, but there is no information in the Articles of Organization suggesting this entity is related to the Defendant Overland or the Browns. *See* Florida Department of State, Division of Corporations, http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResults?InquiryType=EntityName&InquiryDirectionType=ForwardRecord&SearchTerm=overland%20xpress&SearchNameOrder=OVERLANDXPRESS%20L080000475710&ListNameOrder=OVERLANDXPRESS%20L080000475710&Detail=FL.DOS.Corporations.Shared.Contracts.FilingRecord (last viewed 5/12/2021). This second entity has a different principal address, mailing address, registered name, and authorized person than Defendant Overland had.

insufficient.[4]

Count Three stands on different footing.  The Court has determined that the Browns are not entitled to summary judgment on the ERISA interference claim because genuine issues of material fact remain in dispute as to whether the Browns interfered with Schmidt's attainment of benefits.  Disputed issues of material fact also remain, therefore, on her claim against Overland based on the conduct of the Browns.  Schmidt not only will have to prove the merits of her claim at trial, but she also will have to prove that she is legally entitled to obtain judgment against a limited liability company that has been dissolved pursuant to Florida law.  For now, the Court will deny judgment to Schmidt on her claims against Overland.

## IV.     Conclusion

In light of the foregoing, it is hereby **ORDERED** that the Browns' Motion for Summary Judgment (Doc. 78) is **GRANTED IN PART AND DENIED IN PART** and Schmidt's Motion for Judgment (Doc. 79) is **DENIED**.  The Browns are granted summary judgment on Counts One, Two, Four, and Five of the First Amended Complaint, but denied summary judgment on Count Three.  Schmidt is denied judgment against Overland on Counts One through Five.

**IT IS SO ORDERED.**

                                                                BY THE COURT:


                                                                S/Michael R. Barrett
                                                                Michael R. Barrett
                                                                United States District Court

---

[4] Undoubtedly, this same analysis will apply if Schmidt proceeds on these claims against Overland at a bench trial.  Schmidt can move to dismiss these claims against Overland, or the Court will issue an order to show cause why they should not be dismissed.